[Cite as *State v. Searles*, 2011-Ohio-6275.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 96549

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JIMMY SEARLES

DEFENDANT-APPELLANT

---

**JUDGMENT:**
**AFFIRMED**

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas

Case No.   CR-539484

**BEFORE:**   Keough, J., Sweeney, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**   December 8, 2011
**ATTORNEY FOR APPELLANT**

John T. Castele
614 West Superior Avenue
Suite 1310
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Andrew J. Santoli
        Kerry A. Sowul
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Jimmy Searles ("Searles"), appeals his convictions and sentence.  For the reasons that follow, we affirm.

{¶ 2} In 2010, Searles was named in a fourteen count indictment arising from a shooting that occurred inside a Cleveland area bar.  He was charged with three counts of attempted murder, eight counts of felonious assault, and one count each of having weapons while under disability, carrying a concealed weapon, and tampering with evidence. Additionally, the indictment contained numerous firearm and forfeiture specifications.  Searles waived his right to a jury trial and the case was tried to the court.

{¶ 3} At the close of the State's case, the trial court granted Searles's Crim.R. 29 motion for judgment of acquittal on the tampering with evidence charge.  At the close of the all the evidence, Searles was found not guilty of two counts of attempted murder and one count of felonious assault, but guilty of all remaining counts as indicted, including the firearm specifications.  The trial court sentenced Searles to an aggregate prison term of 15 years and ordered the firearm forfeited.  Searles now appeals.

## I.   Manifest Weight of the Evidence

{¶ 4} In his first assignment of error, Searles contends that his convictions for attempted murder and felonious assault are against the manifest weight of the evidence.[1]

{¶ 5} The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009. The use of the word "manifest" means that the trier of fact's decision must be plainly or obviously contrary to all of the evidence. This is a difficult burden for an appellant to overcome because the resolution of factual issues resides with the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.

{¶ 6} Searles argues that his conviction for attempted murder is against the manifest weight of the evidence because he did not formulate or

---

[1]Searles does not raise any argument on appeal challenging his convictions for having weapons while under disability or carrying a concealed weapon.

possess the requisite intent of acting "purposely," and even if he did formulate the requisite intent, his voluntary intoxication negated the mens rea element of "purposely." R.C. 2923.02(A), murder, provides that "no person shall purposely cause the death of another * * *." R.C. 2903.02(A), the "attempt" statute, provides that

{¶ 7} "no person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

{¶ 8} R.C. 2901.22(A), "a person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."

{¶ 9} The events giving rise to this case were captured on surveillance video inside The Hill bar in Cleveland. In July 2010, victims, Nakia Darling, Gary Darling, and Benjamin Phillips, went to The Hill bar. When they walked in, Gary went directly to the bar while Benjamin and Nakia stood nearby. Nakia testified that a guy, later identified as Searles, said something to him and a verbal nonviolent confrontation ensued. Searles then placed his beer on the bar, turned away from Nakia, pulled a gun from

under his shirt, cocked it, and pointed it directly at Nakia. The video tape evidence as well as the testimony demonstrate that Gary stepped between Nakia and Searles and as Gary grabbed at Searles's arm, the gun is discharged. Thereafter, a struggle began between Searles and the victims and Searles discharged his firearm approximately seven more times — three of which struck Nakia in the hand, head, and leg; one struck Gary in the head; and two were fired at Benjamin. This entire altercation, from the time the first words were exchanged between Searles and Nakia until Searles got up off the floor after the struggle with the men, lasted approximately one minute and fifteen seconds.

{¶ 10} Searles argues on appeal that he did not have the specific intent to cause the death of Nakia because Nakia was not shot until after the initial struggle with the gun began; thus, arguably, the gun was discharged randomly and at no specific person or with any specific intent. Also, Searles argues that although his pointing the gun at Nakia could constitute felonious assault, the corresponding act of shooting at a person is necessary for murder or attempted murder.

{¶ 11} A trier of fact may infer an intent to kill where (1) the natural and probable consequences of a defendant's act is to produce death, and (2) all the surrounding circumstances allow the conclusion that a defendant had an intent to kill. *State v. Edwards* (1985), 26 Ohio App.3d 199, 200, 499 N.E.2d

352, citing *State v. Robinson* (1954), 161 Ohio St. 213, 118 N.E.2d 517. These circumstances include the means or weapon used, its tendency to destroy life if designed for that purpose, and the manner in which the wounds are inflicted. *Robinson*, paragraph five of the syllabus. The specific intent to kill may be reasonably inferred from the fact that a firearm is an inherently dangerous instrument, the use of which is likely to produce death. *State v. Mackey* Cuyahoga App. No. 75300, citing *State v. Widner* (1982), 69 Ohio St.2d 267, 431 N.E.2d 1025.

{¶ 12} In this case, Searles pointed the gun at Nakia. This fact is not disputed. Searles testified that he was unable to recall any of the events that occurred at the bar, thus whether he acted purposefully is determined by the surrounding circumstances. The best evidence, the surveillance video, shows that Gary stepped between Nakia and Searles and as Gary tried to grab at Searles's arm, the gun is fired. From the testimony and the video, it can be inferred that had Gary not intervened, the first shot would have struck Nakia.

{¶ 13} Resolving any conflicting interpretation of the facts or the evidence is within the province of the trier of fact. Our review of the record does not demonstrate that the trial court clearly lost its way or created a manifest miscarriage of justice in finding Searles guilty of attempted murder of Nakia.

{¶ 14} We further find Searles's voluntary intoxication argument unpersuasive. "In Ohio, prior to October 2000, evidence of voluntary intoxication was available as an affirmative defense in instances where a defendant was charged with a specific intent crime and could demonstrate that he was 'so intoxicated as to be mentally unable to intend anything.' *State v. Otte* (1996), 74 Ohio St.3d 555, 564, 660 N.E.2d 711. However, pursuant to R.C. 2901.21(C), as amended effective October 27, 2000, 'voluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense.' Accordingly, the defense of voluntary intoxication is no longer applicable." *State v. Stockhoff*, Butler App. No. CA2001-07-179, 2002-Ohio-1342; see, also, *State v. Fredericy*, Cuyahoga App. No. 95677, 2011-Ohio-3834.

{¶ 15} Therefore, the arguments raised by Searles challenging his attempted murder conviction based on his inability to form the requisite mens rea due to his voluntary intoxication are without merit.

{¶ 16} Next, Searles argues that his convictions for felonious assault are against the manifest weight of the evidence because Searles was provoked, initially by the words of Nakia and through the subsequent intervention and struggle over the gun; thus, the court should have consider the lesser charge of aggravated assault.

{¶ 17} R.C. 2903.11(A), felonious assault provides that "no person shall knowingly * * * (1) Cause serious physical harm to another * * *; [or] (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

{¶ 18} Aggravated assault is not a lesser-included offense of the offense of felonious assault. Instead, aggravated assault is an inferior degree of felonious assault because its elements are identical to or contained within the offense of felonious assault, coupled with the additional presence of one or both mitigating circumstances of sudden passion or a sudden fit of rage brought on by serious provocation occasioned by the victim. *State v. Logan*, Franklin App. No. 08AP–881, 2009-Ohio-2899, citing *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294; see, also, R.C. 2903.12; *State v. Stewart*, Franklin App. No. 10AP–526, 2011-Ohio-466, ¶7. A defendant bears the burden of proving the mitigating factor by a preponderance of the evidence. *State v. Rhodes* (1992), 63 Ohio St.3d 613, 590 N.E.2d 261, syllabus. "Words alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." *State v. Shane* (1992), 63 Ohio St.3d 630, 637, 590 N.E.2d 272.

{¶ 19} We find nothing in the record to suggest that the trial court did not give due and fair consideration to the inferior offense of aggravated assault or that his convictions are against the manifest weight of the

evidence. Moreover, because Searles was unable to recall any of the events leading up to or during the altercation, he was unable to withstand his burden of proving that he was under the influence of sudden passion or a sudden fit of rage to satisfy the subjective standard of whether sufficient provocation existed. See *State v. Stewart*, Franklin App. No. 10AP-526, 2011-Ohio-466, ¶9-11.

{¶ 20} Searles was charged with eight counts of felonious assault, but only convicted of seven of those counts. A frame-by-frame review of the video shows Searles knowingly pointed and fired his gun at Nakia and, but for Gary's intervention, the bullet would have struck him. Searles continued shooting during the subsequent struggle and Gary was shot in the head. Based on the doctrine of transferred intent,[2] Searles is criminally liable for his actions towards Gary, even if he did not act knowingly when Gary was shot because Searles acted knowingly when he pointed his gun and shot at Nakia.

{¶ 21} Nakia also testified that Searles's second shot struck him in the hand, the third shot did not hit him, the fourth shot struck him in the side of

---

[2]"The doctrine of transferred intent indicates that where an individual is attempting to harm one person and as a result accidentally harms another, the intent to harm the first person is transferred to the second person and the individual attempting harm is held criminally liable as if he both intended to harm and did harm the same person." *State v. Mullins* (1992), 76 Ohio App.3d 633, 636, 602 N.E.2d 769.

the head, the fifth shot went into the floor, and the sixth shot struck him in the leg as he was crawling behind the bar.

{¶ 22} Benjamin testified that Searles was wrestling on the floor with Gary. He testified he started punching Searles from behind. Searles then pointed the gun backward and fired two shots at Benjamin's forehead, missing him. At that point, Benjamin was able to wrestle the gun away.

{¶ 23} The evidence and testimony show that Searles acted knowingly in discharging his firearm at the victims. Accordingly, we cannot say that the trial court failed to give due consideration to the inferior offense of aggravated assault or that his convictions for felonious assault are against the manifest weight of the evidence.

{¶ 24} Accordingly, his first assignment of error is overruled.

## II. Sentence

{¶ 25} In his second assignment of error, Searles contends that the sentence imposed by the trial court is inconsistent with the principles and purposes of sentencing under the Ohio Revised Code and therefore is contrary to law. To support a claim that a "sentence is disproportionate to sentences imposed upon other offenders, a defendant must raise this issue before the trial court and present some evidence, however minimal, in order to provide a starting point for analysis and to preserve the issue for appeal." *State v. Edwards*, Cuyahoga App. No. 89191, 2007-Ohio-6068, ¶11. In this

case, Searles did not raise this issue of proportionality with the trial court. Moreover, and although he argues his sentence is disproportionate, Searles has failed to identify or demonstrate how his sentence is disproportionate to any other offender similarly situated. Accordingly, even if properly preserved, Searles has failed to withstand his burden of showing disproportionality.

{¶ 26} To determine whether a sentence is contrary to law, we review felony sentences using the *Kalish* framework. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. In its plurality opinion, the *Kalish* court declared that in applying *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, to the existing statutes, appellate courts "must apply a two-step approach." *Kalish* at _4. Appellate courts must first "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." Id. at _26. See, also, R.C. 2953.08(G). If this first prong is satisfied, then we review the trial court's decision under an abuse of discretion standard. Id. at _4 and 19.

{¶ 27} In the first step of our analysis, we review whether Searles's sentence is contrary to law as required by R.C. 2953.08(G). As the *Kalish* court noted, post-*Foster* "'trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make

findings and give reasons for imposing maximum, consecutive, or more than the minimum sentence.'" Id. at _11, quoting *Foster* at paragraph seven of the syllabus; *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, paragraph three of the syllabus. The *Kalish* court held that although *Foster* eliminated mandatory judicial fact-finding, it left R.C. 2929.11 and 2929.12 intact. *Kalish* at _13. Therefore, the trial court must still consider those statutes when imposing a sentence. Id., citing *Mathis* at _38.

{¶ 28} R.C. 2929.11(A) provides that: "[A] court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing[: ] * * * to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both."

{¶ 29} R.C. 2929.12 provides a nonexhaustive list of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses.

{¶ 30} The Kalish court also noted that R.C. 2929.11 and 2929.12 are not fact-finding statutes like R.C. 2929.14.[3] Instead, they "serve as an

---

[3] In *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, the Ohio Supreme Court addressed *Oregon v. Ice* (2009), 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517, holding that *Ice* "does not revive Ohio's former consecutive-sentencing statutory provisions, R.C. 2929.14(E)(4) and

overarching guide for trial judges to consider in fashioning an appropriate sentence." *Kalish* at _17. Thus, "[i]n considering these statutes in light of *Foster*, the trial court has full discretion to determine whether the sentence satisfies the overriding purposes of Ohio's sentencing structure." Id.

{¶ 31} We do not find Searles's sentence contrary to law. Searles was found guilty of (1) attempted murder, a first-degree felony, which carries a maximum penalty of ten years in prison; (2) seven counts of felonious assault, second-degree felonies, which carry a maximum penalty of eight years imprisonment; (3) having weapons while under disability, a third-degree felony, which carries a maximum sentence of three years, and (4) carrying a concealed weapon, a fourth-degree felony, which carries a maximum penalty of 18 months. Moreover, Searles was convicted of three-year firearm specifications, which carry a mandatory prison term that must be served prior and consecutive to any other prison sentence. Therefore, we find that a sentence of 15 years is within the statutory range allowed by law.

{¶ 32} Furthermore, the sentencing journal entry reflects that the trial court considered all required factors of law and found that prison was consistent with the purposes of R.C. 2929.11. See *State v. El-Berri*,

---

2929.41(A), which were held unconstitutional in *Foster*. Trial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences unless the General Assembly enacts new legislation requiring that findings be made." *Hodge* at paragraphs two and three of the syllabus.

Cuyahoga App. No. 92388, 2010-Ohio-146. Accordingly, we find that the sentence is not contrary to law.

{¶ 33} We next consider whether the trial court abused its discretion in imposing the sentence. *Kalish* at _4 and 19. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable, which is more than an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶ 34} We find nothing in the record to suggest that the trial court's decision was unreasonable, arbitrary, or unconscionable. At sentencing, the trial court had the benefit of a presentence investigation report and heard impact statements from a victim, Benjamin Phillips, and Gary Darling's daughter. The trial court also considered mitigation testimony and evidence from Searles, his neighbor, a family friend, and his attorney.

{¶ 35} At sentencing, the trial judge noted the difficulty in sentencing an individual under these circumstances and expressed that the purpose of sentencing is not to consider vengeance or render revenge, but justice. The trial court's statements, the circumstances surrounding the offenses, and mitigation demonstrate that the trial court did not abuse its discretion sentencing Searles to 15 years in prison. The second assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

JAMES J. SWEENEY, P.J., and
EILEEN A. GALLAGHER, J., CONCUR